IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| STRIDER ROGNIRHAR, | ) | 8:08CV89 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| KURT KINLUND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants Robert Houston, Kurt Kinlund, Richard Cruickshank, Dennis Bakewell, Jo Ann Kinney, Mikki Kirkpatrick, Frank Hopkins and Peggy Lange's Motion for Summary Judgment. (Filing No. 47.)  Also Pending is Plaintiff's Motion for Summary Judgment. (Filing No. 42.)   As set forth below, Defendants' Motion is granted and Plaintiff's Motion is denied.

## I.   *BACKGROUND*

Plaintiff filed his original Complaint in this matter on March 3, 2008. (Filing No. 1.)  On August 19, 2008, the court conducted an initial review of Plaintiff's claims. (Filing No. 13.)  In that Memorandum and Order, the court permitted Plaintiff the opportunity to amend some of his claims in order to state a claim upon which relief could be granted. (*Id*.)  In particular, the court granted Plaintiff an opportunity to show that claims he previously alleged in a 2005 case (Case No. 4:05CV3130), and reasserted in this action, were not moot.  (*Id*.)

On September 15, 2008, Plaintiff filed an Amended Complaint.  (Filing No. 18.)  The court reviewed the Amended Complaint on December 30, 2008,

1

and determined that Plaintiff had complied with its August 19, 2008 Memorandum and Order. (Filing No. 21 at CM/ECF pp. 3-4.) However, Plaintiff's Amended Complaint only requested monetary relief, so the court dismissed Plaintiff's claims against Defendants in their official capacities. (*Id.*)

On September 21, 2009, Plaintiff filed a Motion for Summary Judgment along with a Brief and Index in Support. (Filing Nos. 42, 43 and 44.) Defendants responded to Plaintiff's Motion by filing a Brief and Index of Evidence in Response. (Filing Nos. 45 and 46.) In addition, they filed their own Motion for Summary Judgment with a supporting Brief and Index of Evidence. (Filing Nos. 47, 48 and 49.) Plaintiff filed a Brief in Response to Defendants' Motion. (Filing No. 50.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

Plaintiff and Defendants have submitted statements of material facts and responses in accordance with the court's Local Rules. This matter is therefore deemed fully submitted and the court adopts the following relevant undisputed material facts.

## II.  RELEVANT UNDISPUTED MATERIAL FACTS

1.     Plaintiff, Strider Rognirhar, aka Jonathon Picollo, is an inmate under the custody and control of the California Department of Corrections and Rehabilitation ("CDCR").

2.     On January 9, 1995, the Plaintiff was sentenced to 15 years to life on a charge of second degree murder in California.

3.     On April 3, 2001, Plaintiff was transferred to the custody of the Nebraska Department of Correctional Services ("NDCS") pursuant to the Interstate Corrections Compact.

4.     Because Plaintiff was a transfer from California, his placement in Nebraska was contingent upon his ability to  maintain proper institutional behavior in Nebraska.

5.     In January 2005, Plaintiff was removed from his position as a legal aide for initiating paperwork for other inmates without their knowledge, a violation of the NDCS rules and regulations.

6.     In February 2005, Plaintiff filed a lawsuit (*Rognirhar v. Kinlund, et.al*, CI05-423) in the Nebraska State District Court against Nebraska State Penitentiary ("NSP") staff for allegedly confiscating his legal documents.  In this suit Plaintiff filed a motion for a temporary injunction to enjoin Defendants from transferring him out of Nebraska while his case was pending.

7.     On March 1, 2005, the NSP Unit Classification Team met and recommended Plaintiff's transfer back to California.

8.     On March 4, 2005, NDCS Assistant Director Frank X. Hopkins wrote Plaintiff to inform him that due to his behavior it was recommended that he be transferred back to California.

3

9.    On March 9, 2005, Nebraska State District Judge Karen B. Flowers ruled on Plaintiff's motion for a temporary restraining order in *Rognirhar v. Kinlund*, *et.al*, CI05-423. The state asserted it was transferring Plaintiff back to California because of his behavior, but provided no evidence to support this argument. Due to the state's lack of evidence, Flowers "was left with the conclusion" that the state was transferring Plaintiff because he filed the lawsuit. Consequently, she entered an order restraining the NDCS from transferring Plaintiff to California while his lawsuit was pending.

10.    On November 13, 2006, NDCS Director Robert Houston notified Plaintiff that he was administratively restricted from attending religious education classes. Plaintiff was restricted because he made threatening and derogatory comments toward inmates in another faith group and engaged in disruptive behavior while at class. Plaintiff received a misconduct report for his actions.

11.    On November 28, 2006, Judge Flowers dismissed Plaintiff's state court case.

12.    On December 14, 2006, the NDCS transferred Plaintiff back to California.

13.    Under NDCS policy, when an inmate is transferred, all of his legal documents are gathered together and sorted, and the items that the inmate is allowed to possess are sent to the receiving institution.

14.    Under NDCS policy, when an interstate transfer inmate is returned to his home state, the NDCS administrative staff coordinating interstate transfers notifies the NDCS accounting office, and the accounting office sends the inmate's money to the receiving institution.

15.    NDCS accounting office employees have exclusive authority to release an inmate's funds.

16.   On December 18, 2006, the inmate accounting office sent the balance of Plaintiff's funds to the Interstate Compact Coordinator in California.


17.   None of the named Defendants in this case have any authority to release Plaintiff's funds.

(Filing Nos. 18, 44, 46, 49 and 50 (The court also takes judicial notice of Case No. 4:05CV3130, Filing No. 10 at CM/ECF p. 45; Case No. 4:05CV3130, Filing No. 63 at CM/ECF p. 1; Case No. 4:05CV3130, Filing No. 64-3, Attach. 2; Case No. 4:05CV3130, Filing No. 64-5, Attach. 4; Case No. 4:05CV3130, Filing No. 64-23, Attach. 22; and Case No. 4:05CV3130, Filing No. 64-25, Attach. 24).)

## III.   ANALYSIS

### A.   Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56©. *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate the allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th

Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)).   "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.*   Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## B.   Defendants' Motion

In his Amended Complaint, Plaintiff alleges four claims against Defendants: (1) Defendants retaliated against Plaintiff when they transferred him to California, (2) John Doe #1, John Doe #2, John Doe #3 and Bakewell deprived him of legal papers without due process and denied him access to the courts, (3) Doe #1, Doe #2, and Doe #3 violated his right to be free from cruel and unusual punishment, and (4) Defendants failed to timely forward his money to California which caused him to lose property. (Filing No. 18.) Defendants argue they are entitled to summary judgment for each claim. (Filing No. 48.) The court agrees.

### 1.   *Retaliatory Transfer Claim*

In general, a prisoner has no constitutionally protected right against transfer to another prison. *Goff v. Burton*, 91 F.3d 1188, 1191 (8th Cir. 1996); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."). However, "[p]rison officials may not punish an inmate because he exercises his constitutional right of access to the courts." *Sisneros v. Nix*, 95 F.3d 749, 751 (8th Cir. 1996).  This prohibition against retaliatory punishment applies to transfers between prisons. *Id.*

To prevail on a retaliatory transfer claim Plaintiff "must prove that a desire to retaliate was the actual motivating factor behind the transfer." *Goff*, 91 F.3d

at 1191.  In other words, Plaintiff must prove that but for his protected act of filing a lawsuit, he would not have been transferred.  *Id.*  This "but for" test deals with motive, not causation.  *Sisneros*, 95 F.3d at 752.

Here, Defendants argue that Plaintiff was transferred because of his behavior and not because he filed a lawsuit. (Filing Nos. 49-2, Attach. 1 and 49-3, Attach. 2.)  In support of this argument Defendants have presented sworn affidavit testimony  that Plaintiff displayed open contempt for authority, was persistently insubordinate and violated NDCS rules and regulations.  (*Id.*)

In contrast, Plaintiff argues that he was transferred solely because he filed a lawsuit against NSP.  (Filing No. 50 at CM/ECF p. 14.; *see also* Case No. 4:05CV3130, Filing No. 10 at CM/ECF p. 45.)   To support this argument Plaintiff states that his only disruptive behavior, filing lawsuits and grievances, was constitutionally protected.  (Filing No. 18 at CM/ECF p. 4.)  He also relies on Judge Flowers' issuance of a restraining order that prevented Defendants from transferring Plaintiff to California during his litigation.  (Filing No. 50 at CM/ECF pp. 14, 18; Case No. 4:05CV313,  Filing No. 64-3, Attach. 2; Case No. 4:05CV3130, Filing No. 64-5, Attach 4.)

Although summary judgment is not often appropriate when motive is at issue, the undisputed material facts in this record establish that Plaintiff cannot satisfy *Goff's* rigorous "but for" test.  First, prior to filing his lawsuit in state court, Plaintiff was removed from his position as a legal aide for initiating paperwork for other inmates without their knowledge. (Filing No. 49-6, Attach. 5.)  This act violated NDCS administrative regulations.  (*Id.*)

Second, Plaintiff exhibited poor behavior during the 20 months that his case was pending in state court.[1]  Specifically, Plaintiff threatened and made

---

[1]As discussed above, on March 9, 2005, the Nebraska District Court issued a restraining order that prevented Defendants from transferring Plaintiff to California. (Case No. 4:05CV3130, Filing No. 64-3, Attach. 2; Case No. 4:05CV3130, Filing No. 64-5, Attach. 4.).  More than 20 months later, Plaintiff's state court case was

derogatory comments toward inmates in another faith group and engaged in disruptive behavior while at religious education class. (Filing No. 49-5, Attach. 4.)   Plaintiff received a misconduct report for his actions and was administratively restricted from attending religious education classes. (*Id.*)

As part of the agreement between NDCS and CDCR, Plaintiff was required to maintain proper institutional behavior in Nebraska. Plaintiff failed to do so both before and after he filed his lawsuit. (Filing No. 49-6, Attach. 5; Filing No. 49-5, Attach. 4.) Accordingly, the relevant material facts in this case indicate that Plaintiff's transfer back to California was motivated by rational penological concerns, namely Plaintiff's failure to maintain proper institutional behavior in Nebraska. *Cf. Ward v. Dyke, 58 F.3d 271, 274-75 (6th Cir. 1995)* (finding that prison authorities were justified in concluding that an inmate's discontentment and failure to adjust were detrimental to himself and posed a threat to other inmates and prison staff). In light these findings, a reasonable fact finder could not find that Plaintiff's lawsuit was the motivating factor behind his transfer back to California. To conclude otherwise would allow Plaintiff to delay a transfer indefinitely, regardless of his institutional behavior. Such a result does not comport with the discretion that prison officials are due in running their institutions. *See Sanders v. St. Louis County, 724 F.2d 665, 668 (8th Cir. 1983)* ("Prison authorities have a great deal of discretion in running their institutions, and such discretion normally outweighs any interest that any individual prisoner may have in remaining housed in a particular prison.")

2.   *Plaintiff's Claims Against Doe #1, Doe #2 and Doe #3*

Plaintiff's second and third claims contain allegations against Doe #1, Doe #2 and Doe #3. (Filing No. 18.) However, pursuant to the court's December 30, 2008 Memorandum and Order, Plaintiff had until April 29, 2009, to effect service of process on Doe #1, Doe #2 and Doe #3. (Filing No. 21 at CM/ECF

---

dismissed and the restraining order was lifted. (Filing No. 49-6, Attach. 5; Case No. 4:05CV3130, Filing No. 63 at CM/ECF p. 1; Case No. 4:05CV3130, Filing No. 64-23, Attach. 22; Case No. 4:05CV3130, Filing No. 64-25, Attach. 24.)

p. 4.)  In that Memorandum and Order, the court also warned Plaintiff that if he failed "to obtain service of process on [Doe #1, Doe #2 and Doe #3]" this matter would be dismissed "without further notice as to [Doe #1, Doe #2, and Doe #3]." (*Id*.)  Because Plaintiff failed to comply with the court's order, his claims against Doe #1, Doe #2, and Doe #3 are now dismissed without prejudice.

### 3. *Due Process and Access to Courts Claims Against Bakewell*

Although Plaintiff's second and third claims are dismissed with respect to Doe #1, Doe #2 and Doe #3, Plaintiff's second claim also alleges that Bakewell "failed to provide for the return of [his] legal documents" after his transfer to California.  (Filing No. 18 at CM/ECF p. 6.)  As a result, Plaintiff was unable to pursue his legal claims.  (*Id*.)  The court liberally construes Plaintiff's allegation to allege that Bakewell deprived him of property without due process and denied him access to the courts.  The court will explore each allegation in turn.

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  However, "the word 'deprive' in the Due Process Clause connote[s] more than a negligent act." *Daniels v. Williams*, 474 U.S. 327, 330 (1986).  Therefore, "[w]here a government official's act causing injury to life, liberty, or property is merely negligent, 'no procedure for compensation is constitutionally required.'" *Id.* at 333 (quoting *Parratt v. Taylor*, 451 U.S. 527, 548 (1981) (Powell, J., concurring)).

Here, Plaintiff alleges that he wrote Bakewell about his legal documents, but Bakewell denied possessing them.  (Filing No. 18 at CM/ECF p. 6.)  Plaintiff does not allege that Bakewell intentionally stole or lost the legal documents.  Thus, even under the most liberal construction, Plaintiff has only alleged that Bakewell negligently failed to follow NDCS procedures, which require a transfer inmate's legal documents to be gathered, sorted and sent to the receiving institution.  (Filing No. 49-6, Attach. 5.)  Even if Bakewell was

somehow negligent, negligence does not rise to the level of a constitutional deprivation of property. *See* *Daniels*, 474 U.S. at 333.

To prove a violation of the right of meaningful access to the courts, Plaintiff must establish that Bakewell did not provide him with an opportunity to litigate his claim in "a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (citation omitted). "To prove actual injury, [Plaintiff] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" *Id*. (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).

In this case, Plaintiff has not alleged sufficient facts to demonstrate that Bakewell frustrated or impeded his ability to bring a nofrivolous lawsuit. Moreover, plaintiff's filing of the current action plainly demonstrates that he has not been denied access to this court. Consequently, Bakewell is entitled to summary judgment on both Plaintiff's deprivation of property without due process claim and his denial of access to the courts claim.

4.      *Defendants' Failure to Timely Forward Money*

Last, Plaintiff alleges that Defendants failed to timely forward his money to California. (Filing No. 18 at CM/ECF pp. 9-11.) Due to this failure, Plaintiff "lost property" because he was unable to send property home that he was not permitted to possess in the CDCR. (*Id.*) The court liberally construes these statements to allege that Defendants deprived Plaintiff of the use of his money without due process.

Although Plaintiff generally refers to "Defendants" under this claim, he only specifically discusses Kinney and Bakewell's involvement. (*Id*.) Stated another way, Plaintiff does not allege that Houston, Kinlund, Cruickshank, Kirkpatrick, Hopkins and Lang were personally involved in forwarding his money to California. A complaint that only lists a defendant's name in the

caption without alleging that the defendant was personally involved in the alleged misconduct fails to state a claim against that defendant. *See Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (holding that court properly dismissed a pro se complaint where the complaint did not allege that defendant committed a specific act and the complaint was silent as to defendant except for his name appearing in caption)). Accordingly, Houston, Kinlund, Cruickshank, Kirkpatrick, Hopkins and Lang are entitled to summary judgment on Plaintiff's claim that they failed to forward his money to California.

As for Kinney and Bakewell, Plaintiff's claims against them are barred by qualified immunity. Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citations and quotations omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted). Moreover, qualified immunity is "the usual rule" and state actors will enjoy qualified immunity in all but "exceptional cases." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

Here, Plaintiff alleges that Kinney and Bakewell assured him that his money would be sent with him when he was transferred to California. (Filing No. 18 at CM/ECF p. 9.) However, pursuant to NDCS policy, NDCS accounting employees have exclusive authority to transfer an inmate's funds to

11

a receiving institution.   (Filing No.   49-8, Attach. 7 at CM/ECF p. 2.)
Exercising this authority, the NDCS inmate accounting office sent the balance
of Plaintiff's funds to the California Interstate Compact Coordinator on
December 18, 2006, four days after he was transferred.  (*Id.*)  Kinney and
Bakewell were not involved in this transfer.  (*Id.*)  In fact, Plaintiff's only factual
allegations against Kinney and Bakewell are that they informed him of NDCS
procedures prior to his transfer.  (Filing No. 44 at CM/ECF p. 9.)  Plaintiff
entirely fails to explain how these "assurances" violated his constitutional rights.

Given these facts, Plaintiff has failed to establish that Kinney and
Bakewell knowingly violated any of Plaintiff's clearly established statutory or
constitutional rights.   Accordingly, Kinney and Bakewell are entitled to
qualified immunity.

### 5.   State Law Claims

Liberally construed, Plaintiff may also have state law claims against
Defendants for their failure to abide by the Interstate Corrections Compact.  The
court declines to exercise supplemental jurisdiction over such claims because it
has dismissed all claims over which it had original jurisdiction.  28 U.S.C. §
1367(c)(3); *see Stewart v. McManus, 924 F.2d 138, 142 (8th Cir. 1991)*
(affirming "the district court's ruling that the Interstate Corrections Compact has
not been transformed into federal law, and therefore, cannot be a basis for . . .
[a] 42 U.S.C. § 1983 claim").  However, the court will dismiss Plaintiff's state
law claims without prejudice to reassertion in the proper forum.

IT IS THEREFORE ORDERED that:

1.   Defendant's Motion for Summary Judgment (filing no. 47) is
granted.  Plaintiff's federal claims against Houston, Kinlund, Cruickshank,
Bakewell, Kinney, Kirkpatrick, Hopkins and Lange are dismissed with
prejudice.  Plaintiff's state law claims as well as his federal claims against Doe
#1, Doe #2, and Doe #3 are dismissed without prejudice.

2.    Plaintiff's Motion for Summary Judgment (filing no. 42) is denied.

3.    A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 4th day of February, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.